# Commonwealth of Pennsylvania *v.* G. Augustus Page, Appellant.

*Criminal law—Abortion—Adequate charge—Answer to point—Question for jury.*

Where the question is whether the defendant did or did not commit an abortion in manner and form as indicted it is exclusively for the jury, the issue being dependent upon the credibility of the witnesses for the commonwealth and accused respectively. The appellate court will not disturb the verdict of the jury on the ground that the charge of the court and answer to defendant's point were unfavorable to the defendant, and inadequate in the presentation of the case for the consideration of the jury, when the point in question is ingenious but argumentative and composed in part of a skilful combination of fact and inference which did not admit of an unequivocal answer; and where the charge was fair, impartial, adequate and sufficiently guarded the rights of the defendant

Argued Oct. 19, 1897. Appeal, No. 84, April T., 1898, by defendant, from judgment of Q. S. Allegheny Co., Dec. Sess., 1896, No. 446, on verdict of guilty. Before Rice, P. J., Wickham, Beaver, Reeder, Orlady, Smith and Porter, JJ. Affirmed.

Indictment for abortion. Before Slagle, J.

The facts sufficiently appear from the charge of the court below:

The defendant, G. Augustus Page, is charged in this indictment under four counts. These counts are drawn under an act of assembly in relation to the crime of abortion, which, at common law, was not regarded as of so very great importance, but which, in their wisdom, the legislature saw proper to specially provide for. The act of assembly is as follows:

"If any person shall unlawfully administer to any woman, pregnant or quick with child, or supposed and believed to be pregnant or quick with child, any drug, poison or other substance whatsoever, or shall unlawfully use any instrument or other means whatsoever, with the intent to procure the miscarriage of such woman, and such woman, or any child with which she may be quick, shall die in consequence of either of said unlawful acts, the person so offending shall be guilty of felony."

The second section is: "If any person, with intent to procure the miscarriage of any woman, shall unlawfully administer to her any poison, drug or substance whatsoever, or shall unlawfully use any instrument, or other means whatsoever, with the like intent, such person shall be guilty of felony."

The difference between those sections being, that in the first, in order to make out the offense, it must follow that the child or woman died; in the second, merely the administering of poisons or the use of instruments, with intent to produce abortion, makes out the offense, whether or not the child or the mother died.

In this case, as I say, there are four counts. The first count is drawn under the 88th section of the act of March, 1860, which charges the administering of poisons or other substances of that sort, merely with the intent to produce abortion. There

is no evidence in this case that medicines were administered by the defendant with any such purpose, and therefore there can be no conviction under that count.

The third count charges the administering of medicines, and alleges that in consequence of that the mother, Mrs. Martha M. Page, died. There is no evidence, as I say, of the administering of medicine, and therefore there can be no conviction under that count.

The second count alleges that an instrument was used,— "that the defendant did use a certain instrument and other means in and upon the body of one Martha M. Page, she, the said Martha M. Page, being then and there pregnant and quick with child, or supposed and believed to be pregnant or quick with child, with the intent to procure the miscarriage of the said Martha M. Page, contrary to the act of the general assembly." Now that count of the indictment is made out by the simple proof of the fact that an instrument was used, without regard to its consequences; and if you find that the defendant used an instrument upon his wife for the purpose of producing an abortion, then he would be guilty under that count of the indictment.

The fourth count of the indictment alleges that an instrument or other means was used "with the intent to procure the miscarriage of the said Martha M. Page, and in consequence of the said unlawful act the said Martha M. Page did then and there die; contrary to the form of the act of the general assembly;" so that under that count it is necessary that you should be satisfied from the evidence that Mrs. Page died in consequence of the use of this instrument.

The only two counts of the indictment which you are to consider, therefore, are the second and fourth, and as the fourth includes the second—because in the fourth count of the indictment it is necessary that you should be satisfied that the defendant used the instrument and that that resulted in the death of Mrs. Page, of course the second count is included in it—and if you find, then, that he used the instrument and that Mrs. Page died from the effects of that attempted abortion, then you should find him guilty of the fourth count and no more, because the fourth includes the second.

Now, keeping these things in mind, it is necessary for me to

instruct you as to the law bearing ·upon the various questions raised by the testimony. The counsel for defendant have asked me to instruct you upon certain questions of law, and before making any general remarks I will answer the points submitted to me.

Here the court read and answered the defendant's points and, inter alia, point IV.

IV. [In considering the testimony relating to the defendant's alleged admission to Dr. Pettit that he had used an instrument upon the person of his wife, Martha M. Page, the jury should bear in mind the infirmity of human recollection as to the exact words that were used, the interest, if any, which Dr. Pettit has in shielding himself from blame, the fact that on one of the two occasions of said alleged admissions Dr. Pettit himself admits that he is uncertain whether defendant said " that is what I used " or " that is what was used," the testimony of Edward A. Woods that Dr. Pettit told him he was not certain whether defendant said he or she had used the instrument, and all other facts tending to show that Dr. Pettit may be mistaken in repeating the language used by defendant more than a year ago, including the positive denial of the defendant that he ever used, or told Dr. Pettit that he used, an instrument upon his wife; and, unless upon consideration of all the facts, the jury are convinced beyond a reasonable doubt that the defendant did certainly admit that he used the instrument upon his wife, and actually did use it, or assist in its use, their verdict should be not guilty. *Answer:* This is refused. I do not recall any evidence showing any interest of Dr. Pettit in this case. It is not alleged that he produced the abortion. The defendant said that the doctor had agreed to remove the fœtus in case on examination he found it dead. As to any alleged malpractice by him, it would make no difference by whom the instrument had been used. The matters mentioned in this point should be considered in connection with the other evidence in the case, to determine whether or not the defendant did say to Dr. Pettit what he testified the defendant had said; but the guilt of the defendant does not depend on that fact alone; there is other evidence in the case which should be considered.] [1]

Now, gentlemen, as you will observe, taking the fourth count of the indictment, which includes, as I have said, the second,·

there are a number of things that are necessary to constitute this offense. In the first place, the woman must be pregnant or quick with child, or supposed and believed to be pregnant or quick with child. An instrument, or other means of similar character—it does not describe any particular instrument—some mechanical means—must have been used in order to produce an abortion, that is, with the intent to procure the "miscarriage" of such woman, as it is called in this act, and that word is probably used in the act because abortion at common law had a peculiar signification relating to the time at which it was attempted, that is, in relation to the length of time that the child had been conceived, and under our law whenever conception has taken place and an attempt is made to produce a miscarriage it is an offense under this law, so that the time at which conception had commenced is not material here, provided it was well defined. And, further, you must find under this indictment that Mrs. Page died from the effects of that operation. It is not alleged in the count that the child died from that, but it is alleged that Mrs. Page died from the effects of that operation, and therefore you must find that fact, and it is not sufficient that you should find simply that the child died.

A number of these facts are undisputed. The testimony is undisputed of all the witnesses who have any knowledge of the matter that Mrs. Page was pregnant at the time this act was committed. The testimony of the defendant is that she was in the course of pregnancy for about two months and a half; the doctors testified that from the appearances it was from three to four months. The foetus was from three to four months old; but there is no question about the fact that she was at that time pregnant. There is no dispute about the fact that an instrument was used. The defendant himself testifies to that, so that that is beyond any question or dispute, that there was an instrument used for the purpose of producing this abortion. The testimony of the physicians indicates it. The testimony of the defendant himself is that his wife had used an instrument, and that she had told him what instrument was used, and he afterwards produced it, so that there is no question as to the fact that there was an attempt to produce an abortion by the use of an instrument, and that would make an offense under the second count of the indictment—I do not

mean that it would make him guilty of the offense, but would constitute an offense under the act of assembly—but in order to convict under the fourth court of the indictment, you would have to find the further fact that this resulted in the death of Mrs. Page. I do not know whether there is, under the testimony, any great question as to that fact. The testimony of the doctors as to her condition at the time she was taken to the hospital—not only the testimony of Dr. Pettit, but that of the other doctors—would indicate a very bad condition. Dr. Pettit says that when he got there on Thursday he discovered that she had been bleeding very profusely, and there were clots of blood, and that after making an examination he concluded that to save her life it was necessary that this fœtus should be removed; that he had not been certain on the first examination on the Saturday and Monday preceding, that the child was dead; that upon this examination on Thursday he withdrew one of the limbs out far enough for him to know that the child was dead and he then proceeded to remove it, and that it was necessary to do that in order to save her life, in that condition.

Now, if you are satisfied from the testimony in the case that Mrs. Page would have died, then, if she died under an operation, which was necessary to save her life, still the death must be related back to the original injury, and if you are satisfied from all the circumstances that the original injury would have caused her death—satisfied of all these facts, of course, beyond a reasonable doubt—that the original injury produced by the use of these instruments would have caused her death, then the fact that she died under an operation or in consequence of an operation which was necessary to save her life would not change the effect of that condition.

Then that would constitute the offense; the woman was pregnant, an instrument was used, and Mrs. Page died; but in order to convict, you must further find, beyond a reasonable doubt, that the instrument was used by the defendant in this case, or, as has been suggested in the point submitted and which I have answered in the affirmative, that he assisted in doing it, because if he was present, assisting in its use by any person else—his wife or any other person—he would be equally guilty, if he was there assisting in the operation, though he didn't use the instrument himself; but under the testimony in the case,

it seems to me, if there is any doubt about the fact of his using it at all, there would be the same doubt as to his assistance, because there is no evidence as to any circumstances of that sort. The testimony on the part of the commonwealth goes to show that he did it himself, and if he did not do it himself the testimony would not justify any inference that he assisted in it, it seems to me ;. however, that is all for you.

[Now you have heard the testimony discussed fully by counsel and it is not necessary for me to repeat it. You have heard the testimony of Dr. Pettit as to what he said at the time the defendant first spoke to him in reference to this matter, and you have heard the positiveness with which he asserts that at that time the defendant said, " I used this instrument," and you have heard also the reason why he says he is certain of the language used at that time, because of the subsequent conversation in relation to the matter. Of course the change of one word would make a great difference, and if the circumstances were not such as to justify you in believing that Dr. Pettit remembered distinctly the language which was used that might raise a reasonable doubt in your minds ; but you will take his recollection in connection with all the other testimony in the case and say whether or not you are satisfied that Dr. Pettit now testifies to what actually occurred ; and, in connection with that, you have · the testimony of Mr. Kress as to what was said to him, and it seems to me that that is in corroboration of what was said to Dr. Pettit, or what he alleges was said to him. Mr. Page denies that he said to either of these men what they testify that he did say to him—denies that he used the word " I," but says that he used the word " she ; " but you have the testimony of those witnesses, and you will remember what they said and about all the circumstances attending the conversations, and if you are satisfied that they are telling the truth about it, then you have the admission of the defendant that he was the party who committed this offense. Against that you have his statement that he said nothing of the sort, and you will take into consideration, also, all the circumstances attending the transaction, in order to determine on which side the truth lies.

As I said, without going over all the testimony in the case upon this point, you must be satisfied after a full and fair con-

sideration of all the evidence—satisfied fully and beyond a reasonable doubt, not a mere possibility of doubt, but some reasonable difficulty in coming to and maintaining your conclusion as to his guilt. If you have such a doubt you will find him not guilty. If you are satisfied beyond such a doubt that he committed this offense, then you would find him guilty on the fourth count, if you find that the death of Mrs. Page was the consequence of this act; or, if you have any doubt about that, you will find him guilty on the second count of the indictment—of an attempt.] [2]

To which charge of the court counsel for defendant except. [3]

Verdict of guilty and sentence thereon. Defendant appealed.

*Errors assigned* were (1) refusing to affirm defendant's fourth point and in the answer thereto, reciting same. (2) To a portion of the judge's charge, reciting same. (3) The charge of the court as a whole is unfavorable to appellant, and inadequate in its presentation of the case to the jury. (4) In entering judgment upon the verdict founded upon the meager and uncertain evidence presented by the commonwealth in this case.

*D. F. Patterson*, with him *Chas. A. Woods*, for appellant.— On the whole, and as a whole, it was a charge for conviction, in a typical case for acquittal on the ground of reasonable doubt.

We contend that no judgment should have been entered upon a verdict founded, as this verdict must have been, upon the testimony of a single witness respecting the appellant's use of a single word. In Com. v. Cleary, 135 Pa. 64, PAXSON, C. J., said: "When a man's life may depend on a single word, the use of language cannot be attended with too much care." This was said in reference to the language used by the court below in its charge, and is certainly no less applicable to language alleged to have been used by party charged with crime.

The note to page *826 of the 10th edition of Starkie on Evidence furnishes a valuable illustration of the damage likely to result from the misuse of a single word.

We claim that even a stringent administration of justice does not require the punishment of a reputable citizen when the question of his guilt or innocence depends upon a witness's understanding or recollection of whether he said "I did it" or

" she did it," especially when there is so much in the case to indicate that as a matter of fact " she did it."

*John C. Haymaker*, district attorney, for appellee. ·

OPINION BY BEAVER, J., December 13, 1897:

This case affords an illustration of the necessity for the efforts which organized society has made, through the laws which it has enacted, to protect itself—a necessity never more apparent and pressing than in these latter days of modern social life, when the moral tone in regard to crimes of this character has become lamentably lax.

Were there facts fairly raised by the evidence for the consideration of the jury and was the testimony in regard to these facts presented for their consideration in such a way as to guard the legal rights of the defendant? These, under various forms, are the questions raised by the assignments of error and admit of a very simple and direct answer.

The defendant's fourth point, the answer to which is complained of, is ingenious, but it is argumentative and is composed in part of a skilful combination of fact and inference, which did not admit of a direct and unequivocal answer. The court undertook to answer it, however, and we think did so wisely and well. The charge was fair, impartial, adequate and sufficiently guarded the rights of the defendant.

The principal witness for the commonwealth, Dr. Pettit, was clear in his recollection and emphatic in his declarations as to the defendant's admissions as to his personal connection with the principal fact upon which the commonwealth relied for his conviction, his recollection being fortified by the rebuke which he had administered to the defendant at the time, which would have been entirely out of place, except upon the theory of the defendant's personal participation in the operation which finally resulted in the death of his wife. The previously expressed intention of the defendant to another witness was, of course, powerfully corroborative of the commonwealth's case. The testimony of these witnesses, whose natural bias, if they had any, would, because of their previous friendship for him, have been with the defendant was opposed by the simple though emphatic denial of the defendant.

The issue was a very simple one. It was exclusively for the jury, under proper instructions from the court. Such instructions we think they had. We are not prepared to say that the verdict of the jury was not warranted by the facts. We are of the opinion that the judgment of the court below should be, as it now is, affirmed, and the record is remitted to the court below with directions that the defendant be remanded to the Western Penitentiary to serve that portion of the sentence yet unserved at the time this appeal was perfected, to wit: the 31st day of July, 1897.